DAVISON, Clerk in Chancery &c. *v.* DE FREEST and others.

A devise of a farm to four persons in fee, to be equally divided between them ; and in case either of them died without issue living at his death, then the share devised to him, to be equally divided between the survivors and their heirs forever ; creates a vested estate in fee in each of the four devisees, in an undivided fourth of the farm, determinable as to each on his dying without issue living at .his death ; and the devise over is a valid future estate in expectancy, or executory devise.

Where the court of chancery, under the statute authorizing the sale of infant's lands, directed the sale of a farm, in which four infants as tenants in common, had a fee determinable as to each on his death without issue, and in which there was a devise over to the survivors upon such contingency ; it will be deemed that the court intended that the purchaser should acquire the whole title, and on any of the proceeds coming within the control of the court, it will require the infants on becoming of age, to convey to the purchasers, as a condition of their receiving such proceeds.

The conversion of lands of infants into personalty, by means. of a sale under the statute, does not alter the character of the property, in respect of those who had interests in the land which might be affected by such an alteration.

Thus, where all the infants shares were determinable fees, with executory devises to the survivors, and the whole estate in the land was sold ; it was held that on the death of one, by which the devise over in her share would have taken effect, if the land had not been converted, her share of the proceeds must be paid to the

executory devisees, and that neither her husband nor her administrator had any right to such share.

The interest which accrued on the proceeds in her life time, belongs to her administrator.

The orders of the court, made on the sale of infants lands under the statute, and distributing the proceeds, though conclusive between the infants and purchasers, do not conclude the infants as between themselves, as to their respective rights and interests in the fund.

A purchaser under an order for the sale of infants lands, who has never been evicted or disturbed in his possession, cannot resist the foreclosure of his mortgage for the purchase money, on the ground that he did not obtain a good title.

A controversy decided between co-defendants, in respect of the fund sought and recovered by the bill; where the material facts were stated in the bill, and their respective claims were argued at the hearing.

Albany, January 17; March 20, 1846.

The bill was filed January 23, 1845, by John M. Davison, clerk of the court of chancery, for the third circuit, to foreclose a mortgage executed to him by the defendants Walter De Freest and wife and George J. Sharp and wife, for $4615 42, on lands in the town of Brunswick in the county of Rensselaer, under the following circumstances. Coonrod Colehammer, died seised and possessed of the premises, on the 19th day of March, 1838. By his last will and testament, dated May 17, 1837, he first directed the payment of his debts out of his personal property. He then devised as follows ;

" Second : I hereby give devise and bequeath unto my four grandchildren, William Colehammer, the son of my son Robert Colehammer deceased, Martin Colehammer the son of my son Stephen Colehammer deceased, and Polly Colehammer and Rachel Colehammer, the daughters of my said son Stephen deceased, all the real and personal property of which I shall die seised and possessed, to be equally divided between them. To have and to hold the same, unto them my said grand children, their heirs and assigns forever.

Third. I hereby also declare that it is my will, that in case of the death of either of my above named grandchildren without issue living at the time of his or her death, then the share of such deceased grand children, devised to him or her as above mentioned, is to be equally divided between the surviving grand children, and their heirs forever. And in case a second and

third of my said grandchildren shall so die without issue, as aforesaid, his, her, or their share, or shares shall be equally divided among his, her or their survivor or survivors of said grand children and their heirs."

The four grandchildren survived the testator, and in January, 1839, all of them being infants, a petition was presented to the Vice-Chancellor of the third circuit, by the respective general guardians of William and Martin, and by or in the name of Polly and Rachel Colehammer ; setting forth, among other things, that their grandfather, Coonrod C., devised to them in fee and absolutely, all his real and personal estate, including the farm in Brunswick, (being the mortgaged premises in this cause.) That each of the infants was seised of an equal undivided fourth of the farm, and that it would be for their interest to have the same sold, pursuant to the statute.

Upon this petition, Stephen Colehammer and Martin Springer, were appointed special guardians of the four infants, for the purpose of making the sale ; and the petition was referred to a master in the ordinary course, who reported that the facts stated in the petition were true, and that the interests of the infants would be substantially promoted by a sale of the farm. The Vice-Chancellor thereupon, on the 20th day of February, 1839, made an order confirming the master's report, and authorizing the special guardians to sell all the right and title of the infants in the farm.

The special guardians, pursuant to this order, sold and conveyed the farm on the first day of April, 1839, to De Freest and Sharp, who paid half the purchase money, as and for the shares of William and Martin Colehammer ; and for the residue, being the shares of Polly and Rachel Colehammer, they executed their bond, and the mortgage in question, to the clerk of the court. One half of the principal was made payable at the time when Polly should become of age, and the other half when Rachel should attain her majority, and the annual interest in the mean time, to the special guardians. This disposal of the proceeds, was all directed and sanctioned, by the order of the court confirming the sale.

Martin Colehammer, one of the infants died under age and

without issue. Polly Colehammer became twenty one years of age, in September, 1842. She married the defendant William A. Kilmer, and afterwards died intestate and without issue. Letters of administration on her estate were issued to Kilmer.

Besides the mortgagors, William and Rachel Colebammer were made defendants, and the bill stated the principal facts in the case. The mortgagors put in an answer, alleging that they did not obtain a good title to the farm, through the proceedings before the Vice Chancellor and the deed of the special guardians, and insisting that this was a bar to the foreclosure. The Colehammer's claimed that they were entitled to all the proceeds of the mortgage which were the share of Polly Kilmer in the farm ; and W. A. Kilmer claimed the whole of that share, as administrator.

*M. T. Reynolds,* for the complainant and for W. A. Kilmer.

1. The title conveyed by the guardian of the devisees, under the will of Coonrod Colehammer, by virtue of the order of the court of chancery, vested in the purchasers a good and valid estate in fee to the premises conveyed ; as whatever be the construction of the will, the whole title was in the parties before the court. There is therefore no failure of title, and the mortgage is valid, and the court will decree a foreclosure as against De Freest and Sharp.

2. The court would make the same decree, whether by the sale under the order of this court, a valid title was or was not given. The deed is a mere quit claim, of such interest as the parties had in the premises ; and for that interest, more or less, the mortgagors agreed to give the sums reported, and for part of which the mortgage was executed.

3. There is no pretence of any fraud on the part of the complainant, or those whom he represents. And the mortgagors can no more defeat the recovery of the money secured by the mortgage, than they could recover back the money paid down at the sale.

4. If they were entitled to any abatement in equity, they should have filed a cross bill, and made the two other heirs parties ; so that they might have been made to contribute and refund a portion of the monies which they had received.

5. The mortgagors will be safe in paying the mortgage, and have no interest in the question as to the distribution of the proceeds when paid into court.

6. As to the defendants, William and Rachel Colehammer; they have no interest in preventing a decree of foreclosure. They have no right or interest in the land mortgaged.

7. They are neither of them entitled to any portion of the proceeds of the sale, as the devise over is void.

8. If the devise over is not void, still the last named defendants are not entitled to any portion of the proceeds, as the right of all parties was settled by the proceedings and order of sale, and that order cannot be impeached collaterally.

9. The court of chancery had power in its discretion, to order the proceeds of the sale to be equally divided, and the same to be held absolutely by each, without limitation over, upon the contingency specified in the will. It could certainly have ordered the interest of each to be sold, and the proceeds would then have been absolutely his. The same result was more beneficially produced, by selling entire and making an absolute division of the proceeds.

10. The last named defendants, having received the full benefit of the order distributing the proceeds of sale, and thus secured, (without liability to refund,) an absolute interest in one-fourth of the money to each, cannot now equitably claim any share of the proceeds of the mortgage in suit.

11. If the last named defendants have any claim to the mortgage money, as being the proceeds of the sale of an estate in which they had an interest; then the money should be paid to the defendant Kilmer, as the administrator of Polly Colehammer, and by him applied in due course of administration: The defendants, William and Rachel C., having no prior claim over other creditors.

12. In any event, Kilmer, the administrator, is entitled to receive the interest on the sum of $2307 71, in arrear and unpaid up to the time of her death.

13. He is also entitled to receive one-third of $2307 71, the share of the devisee who died before Polly Colehammer, and which vested in her absolutely, on the death of that devisee.

*J. Koon*, for the mortgagors, contended that the infants had only a determinable fee in the land, that the executory devise over was valid, but that it was doubtful whether the court had jurisdiction to sell the contingent expectant estates. If so, no title to the latter passed to the purchasers, and the bond and mortgage were without consideration, and no decree could be made on the mortgage. On his proceeding to argue these points, the court stopped him ; assigning as a reason, that if no title had passed to the mortgagors, it would not prevent a decree for the foreclosure of the mortgage.

*D. Buel, Jr.*, for William and Rachel Colehammer.

I. By the will of Coonrod Colehammer, his four grand-children each took an undivided fourth part of his real estate, (consisting of the premises included in the mortgage in suit.) The estate which each took, was a fee, determinable in case they respectively died without leaving issue at their decease ; and in such event, the surviving grand-children took the share of the one so dying.

The devise over to the survivors, was a good executory devise, and the contingency on which it took effect, must happen within a single life in being ; consequently it is a good expectant estate under the revised statutes. (1 R. S. 723, 4, §§ 15, 24 ; Cro. Jac. 590 ; 2 Black. Com. 173 ; Fearne on Exec. Devises, 396, 399, Butler's note, *d.*)

The case, before the revised statutes, was fully within the decisions respecting executory devises. (16 Johns. 382 ; 20 ibid. 483 ; 3 Paige, 281.) And the decisions on wills made since, show that it is a good expectant estate, under the provisions of those statutes. (8 Paige, 483 ; 10 ibid. 140, 151.)

II. It may be doubtful whether the sale by the guardians by the order of this court, passed the title to any more than the determinable estates of the infants, and not the executory contingent estates.

1. Although the order and deed may be broad enough to carry the whole interest, it is I think certain, that if one of the devisees had attained the age of twenty-one, and made a conveyance of all his interest, and then died without issue, his grantee's estate

would have been determined, and the surviving devisees would have taken his share. (*Anderson* v. *Jackson*, 16 Johns. 382.)

2. The statute gives to sales by order of the court, the same effect, "as if made by such infant of full age." (2 R. S. 195, § 178, and see § 176.)

3. To give the sale any greater effect, would conflict with the provision in the 176th section. But,

III. If the entire interest of the infants, including as well their determinable estates, as the executory contingent interests, passed by the sale; still the surviving devisees of Coonrod Colehammer have the same right in the proceeds, as they would have had in the land.

The statute regulating sales of infants lands, is most express on this matter. (2 R. S. 195, § 180.) It follows, that as William and Rachel Colehammer survived Polly, (the wife of Kilmer,) they take her share of the proceeds.

IV. The court will settle the questions in this suit. The infants whose lands were sold, are by the statute made wards of the court, so far as relates to such property, its proceeds and income; and are to make order for the application and disposition of the proceeds. (2 R. S. 195, § 179.)

*Reynolds*, in reply.

The points made by the surviving devisees, are more appro-. priate for a cross bill, where Kilmer might contest them.

The statute directs the money arising from these sales, to pass as if it were the land; i. e. it is to be distributed as it ought to go between the parties. The vice-chancellor had all this before him, when he made the order directing a separation into four shares, which gave each an absolute interest. The shares of the two youngest were invested *for their use*, by the order; and if any portion had been required for the support of either, its application would have been ordered, without notice to the executory devisees. William C. has doubtless received all his fourth, and his third of Martin's share.

Again, the court only ordered the interest of these two youngest parties sold, and no more was sold, so that this mortgage is for

their actual vested interest alone, and no part of it passed by the executory devise, on Mrs. Kilmer's death.

THE ASSISTANT VICE-CHANCELLOR.—In the case of *Banks and others, Executors of McCarthy* v. *Walker,* (3 N. Y. Legal Observer, 340,(*a*) after a full consideration of the subject, I decided that in a suit for the foreclosure of a mortgage given for the purchase money, the mortgagor although personally liable for the debt, cannot set up as a defence, the failure of the title to the land, unless he has been evicted from the possession.

In this suit, the mortgagors have never been disturbed in the possession of the lands. Indeed, no one makes any claim adverse to their title. Whatever may be my views of the construction of the devise in question, it cannot avail the mortgagors as a defence to the suit. At the same time, if there be any room for a doubt as to the conveyance to them having transmitted the title which the court ordered and intended, it is due to the purchasers upon the faith of the order of the court, to make suitable provision for the vesting of such title as may remain in any of the claimants of the fund, before permitting them to receive it on the foreclosure.

The other questions in the cause, arise between Kilmer and the two surviving Colehammer's. I think they may be decided on these pleadings. The bill contains the material facts, and Kilmer's claims were argued at large by his counsel.

There is no doubt but that by the devise, the four grandchildren each took a vested estate in fee, in an undivided fourth of the lands, determinable as to each, on their respectively dying without issue living at their decease ; and in that event, the share of the one so dying, was to go equally to the survivors. The latter was a valid future estate in expectancy, but it was not vested.

The two surviving grandchildren do not insist, but that by the sale to De Freest and Sharp, their future interests were well and sufficiently conveyed under the orders of the court.

---

(*a*) Since reported, 2 Sand. Ch. R. 344.

And I will assume, for the argument, that such was the effect of the orders and the sale and conveyance thereby directed.

The order of sale, appears to have assumed that each devisee had an absolute and indefeasible estate in fee, in an undivided fourth part of the lands; and it is contended by Kilmer, that the rights of the devisees were thereby fixed and determined, and that the order cannot be impeached collaterally. Also, that the order for the application and division of the proceeds, is final, and vests the respective shares absolutely, in the manner directed in such order.

As between the infants and the purchasers, the orders may be so far conclusive as to protect the latter; but 1 do not think that they finally settle any questions between the infants themselves. The statute is express, that the sale shall not give to the infant, any other or greater interest or estate in the proceeds of such sale, than he had in the estate sold. (2 R. S. 195. § 180.) The argument in behalf of Kilmer, directly conflicts with this enactment; and if the orders were more pointed than they are, I do not see how the force of the statute could be overcome.

The same section of the statute, provides that the proceeds of the sale shall be deemed real estate, of the same nature as the property sold. Therefore after the sale, the rights of the four grandchildren in the proceeds, continued precisely the same as they were before. And on the death of Martin Colehammer without issue, the capital of his one fourth of the proceeds, belonged to the other three grandchildren, each taking a vested and absolute interest in one third. On the death of Mrs. Kilmer without issue, the capital of her fourth part vested in like manner, absolutely in the two survivors, William and Rachel. The income which accrued on her fourth part, during her life, belongs to Kilmer as her administrator. Beyond that, he has no claim upon that portion of the fund.

His claim for his wife's third part of Martin Colehammer's share, cannot be litigated here. That share is not now in controversy, and there is no issue or evidence, upon which it can be determined with propriety.

This reminds me of the point, that the surviving grandchildren, having received in their shares, the full benefit of the order

of sale, and one of them taken his fourth of the proceeds absolutely, without liability to refund; they cannot now claim to participate in the share of Mrs. Kilmer.

This is not a just conclusion, if the facts were precisely as they are stated in the point. The receipt of his share by William does not alter its character, or exonerate his representatives from accounting for it on his-death without issue, in the life time of Rachel. If he should dissipate it, Rachel may be the loser in consequence of the order of sale and distribution, but Kilmer has no interest in the matter.

If Mrs. Kilmer's share had been paid to her guardian and invested on other security, the same principles would have been applied to it. It would have retained its character as real estate, held under devise, and her interest determinable.

The court's power of dealing with it for the support of the infant, does not affect the question.

The decree must declare the rights of the parties accordingly.

As the whole subject is peculiarly within the disposal of the court, I think provision should be made for the protection of the purchasers who executed the mortgage, against any doubt as to their having acquired the whole estate in the lands sold. The proceedings show clearly, that the court aimed to vest them with the whole title.

The decree may provide that William Colehammer before receiving any part of the fund, shall release and convey to the mortgagors, or to the purchaser at the sale under the decree, all the title he may have acquired to the premises, by the death of Martin and Mrs. Kilmer, with a covenant for a similar release in case he survives Rachel, and she shall die without issue. And the capital of Rachel's share in this mortgage, is to remain in court, and is not to be paid out to her, or her heirs or representatives, except on the execution of a similar conveyance.

With these provisions, the usual decree may be entered. A master's report as to the necessity of selling the whole property together, is requisite, unless the parties agree upon a mode of sale; and the cause must be heard on such report, prior to directing the sale.